# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HALIKI GREEN JR., | Case No. 1:26-cv-00322-JLT-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS |
| v. | |
| JEFF MACOMBER, et al., | (ECF No. 17) |
| Defendants. | **OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

Pending before the Court is the partial motion to dismiss for failure to state a claim filed by Defendants Jeff Macomber and Patwin Horn. The Court held a hearing on May 13, 2026. Dina Chehata, Esq., appeared on behalf of Plaintiff. Eric Miersma, Esq. appeared on behalf of Defendants. Having considered the moving papers and arguments by counsel, as well as the Court's file, the Court issues the following findings and recommendations recommending granting Defendants' motion.

## I.

## BACKGROUND

Plaintiff brings this religious liberty and excessive force case. In short, Plaintiff contends that Defendants have committed two sets of related acts. First, Plaintiff alleges that Defendants have systematically denied him access to Jumu'ah services, vital to Plaintiff's Muslim faith, while allowing for congregation and prayer by groups of other faiths. Second, Plaintiff's use of a

prayer shall allegedly precipitated an unprovoked use of unreasonable force by an officer.  All of Plaintiff's causes of action are based on these basic facts.

Plaintiff is Haliki Green Jr., a Muslim man incarcerated at Kern Valley State Prison ("KVSP") by the California Department of Corrections and Rehabilitation ("CDCR").  (ECF No. 1, ¶¶ 1, 15, 19.)  Defendant Jeff Macomber is the Secretary of CDCR and holds final decision-making authority over CDCR policies, procedures, and operations governing religious accommodations.  (Id. at ¶ 16.)  Defendant Patwin Horn is the Warden of KVSP and holds decision-making authority over KVSP's institutional polices, procedures, and practices affecting religious programming.  (Id. at ¶ 17.)  Defendants Macomber and Horn are sued in their official capacity only.  (Id. at ¶¶ 16, 17.)  Defendant Doe 1 was a KVSP correctional officer on duty on January 22, 2024.  (Id. at ¶ 18.)  Doe 1 is sued in his individual capacity only.  (Id.)

Plaintiff's sincerely held religious beliefs require him to participate in Jumu'ah, a weekly congregational prayer held at midday every Friday.  (Id. at ¶ 20.)  Jumu'ah consists of an obligatory sermon followed by congregational prayer and typically lasts around 30-45 minutes. (Id.)  Jumu'ah is a central practice in Islam and is considered an obligatory practice for able-bodied Muslim men.  (Id. at ¶ 21.)  Though often led by a Muslim religious leader called an imam, Plaintiff sincerely believes that in the absence of an imam, he or another qualified Muslim incarceree may lead the sermon and lead Jumu'ah prayer.  (Id. at ¶ 22.)  Denial of the opportunity to participate in Jumu'ah services prevents Plaintiff and other Muslim incarcerees from fulfilling a religious obligation, with every missed Jumu'ah prayer resulting in additional deprivations of that religious practice.  (Id. at ¶ 23.)

CDCR regulations require institution heads, including Defendants Macomber and Horn, to make "every reasonable effort to provide for the religious and spiritual welfare of all interested incarcerated persons . . . ."  (Id. at ¶ 24, quoting Cal. Code Regs. tit. 15, § 3210(a).) The regulations further require that a reasonable amount of time and accommodation be provided for religious services, consistent with facility security and other necessary institutional operations.  (Id., citing Cal. Code Regs. tit. 15, § 3210(c).)  Where practicable, institution officials are required to ensure that other facility activities do not conflict with or disrupt

scheduled religious services.  (Id., citing Cal. Code Regs. tit. 15, § 3210(c).)

When a chaplain is unavailable, CDCR regulations permit institution heads to designate qualified incarcerated persons to minister to the religious needs of incarcerated persons of that faith.  (Id. at ¶ 25, citing Cal. Code Regs. tit. 15, § 3211(a).)  According to Plaintiff, CDCR facilities, including KVSP, have previously offered Jumu'ah prayer services and are familiar with the basic requirements for observance.  (Id. at ¶ 26.)  Plaintiff alleges that Defendants Macomber and Horn do not maintain a standardized or consistent schedule for Jumu'ah services at KVSP.  (Id. at ¶ 27.)  Plaintiff further alleges that Defendants Macomber and Horn maintain a policy or practice under which religious services are conducted only when staff or volunteer chaplains are present, and incarcerated persons are not permitted to lead services when a chaplain is unavailable.  (Id. at ¶ 28.)

Over several years, Plaintiff has repeatedly brought informal and formal grievances regarding the lack of consistent Jumu'ah services.  (Id. at ¶ 29.)  Since Plaintiff's transfer to KVSP in or about November 2023, Muslim incarcerees at KVSP have been permitted to hold, on average, fewer than five Jumu'ah services per year.  (Id. at ¶ 30.)  During the same period, Plaintiff alleges that KVSP regularly provided congregational religious services for other faith groups, including Christian services offered approximately 4-5 times per month.  (Id. at ¶ 31.)

In 2024, Plaintiff alleges he exhausted the CDCR administrative remedy process concerning the lack of consistent Jumu'ah services at KVSP.  (Id. at ¶ 32.)  KVSP and CDCR staff informed Plaintiff that Jumu'ah services would not be conducted unless a chaplain was physically present, a condition Plaintiff states occurred infrequently and unpredictably.  (Id. at ¶ 33.)  Yet, Plaintiff's sincerely held religious beliefs do not require the presence of a chaplain for valid participation in Jumu'ah.  (Id. at ¶ 34.)  Plaintiff proposed that qualified incarcerees be permitted to lead Jumu'ah services when a chaplain was unavailable and that, if the chapel was unavailable, services be held in an alternative suitable space, such as an empty classroom or communal yard.  (Id.)  KVSP and CDCR staff allegedly rejected these proposals, stating that Jumu'ah services would not be conducted in the absence of a chaplain and that incarcerees were not permitted to lead the services. (Id. at ¶ 35.)  Staff referenced staffing limitations and general

3

safety or security concerns as reasons for these denials. (Id.)  During the same period, congregational services for other faith groups, including Christian services, were not canceled or rescheduled based on staff availability.  (Id. at ¶ 36.)

In October 2024, Plaintiff's counsel sent a formal demand letter to CDCR seeking resolution regarding access to Jumu'ah services.  (Id. at ¶ 37.)  CDCR did not respond.  (Id.)  In December 2024, KVSP leadership approved a memorandum permitting Muslim incarcerees in "Facility C," including Plaintiff, to conduct Jumu'ah services in the communal yard without chaplain supervision.  (Id. at ¶ 38.)  Approximately two weeks later, Plaintiff alleges that this approval was rescinded, "after which Jumu'ah services again became sporadic and inconsistent for Plaintiff Green and other Muslim incarcerees."  (Id. at ¶ 39.)  On November 21, 2025, a partial Jumu'ah service was conducted at KVSP, during which Plaintiff led congregational prayer, but the required sermon was not permitted.  (Id. at ¶ 40.)  This was the first Jumu'ah services permitted in months.  (Id.)

On January 21, 2024, Defendant Doe 1, a correctional officer at KVSP, informed Plaintiff that he was not permitted to carry his prayer shawl without documentation.  (Id. at ¶ 41.)  Plaintiff asked for clarification because he was unaware of any such requirement and had not previously been asked by correctional staff, including Defendant Doe 1, to produce documentation for his prayer shawl.  (Id. at ¶ 42.)  "Doe 1 declined to provide clarification and warned Plaintiff Green that he would need documentation in the future."  (Id. at ¶ 43.)

On January 22, 2024, while Plaintiff was walking to his scheduled "pill call" wearing his prayer shawl, when Doe 1 approached him.  (Id. at ¶ 44.)  Plaintiff stopped walking when he saw Doe 1 approach him.  (Id. at ¶ 45.)  Plaintiff turned around to face the wall in anticipation of a pat down.  (Id. at ¶ 46.)  Plaintiff alleges that Doe 1 stood behind Plaintiff Green and demanded documentation for the prayer shawl.  (Id. at ¶ 47.)  Plaintiff, while facing the wall, stated that he did not have documentation.  (Id. at ¶ 48.)  Plaintiff alleges that without issuing a warning, "Doe 1 grabbed Plaintiff Green's right arm from behind and punched him repeatedly in the head, pummeling him to the ground and causing him to lose consciousness."  (Id. at ¶ 49.)  During the altercation, "Doe 1 ordered Plaintiff Green to stop resisting, although Plaintiff Green was not

resisting." (Id. at ¶ 50.) "Doe 1 continued to strike Plaintiff Green after he lost consciousness." (Id. at ¶ 51.) The use of force ended only after other correctional officers intervened. (Id. at ¶ 52.) Plaintiff was then taken for medical evaluation, which documented an abrasion to his right knee and pain in his right frontal region. (Id. at ¶ 53.) As a result of the incident, Plaintiff alleges that he experienced emotional distress and ongoing fear for his personal safety. (Id. at ¶ 54.)

Plaintiff reported the incident to Lieutenant H. Arreola, who reported the matter to the KVSP Use of Force Office. (Id. at ¶ 55.) Plaintiff subsequently filed a formal grievance regarding the incident and requested review of available body-worn camera footage. (Id. at ¶ 56.) Plaintiff alleges he completed exhaustion of administrative remedies in 2025 and "received a memorandum from Defendant Warden Horn stating that CDCR investigated the incident and sustained Plaintiff Green's use-of-force allegation." (Id. at ¶ 57.) However, the memorandum did not disclose any personnel action taken in response. (Id.)

On January 15, 2026, Plaintiff commenced this action. (ECF No. 1.) Plaintiff brings four causes of action: 1) Violation of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc; 2) Violation of the Eighth Amendment to the United States Constitution, 42 U.S.C. § 1983; 3) Violation of the Free Exercise Clause of the First Amendment to the United States Constitution; and 4) Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. (Id. at pp. 10-17.) On March 25, 2026, Defendants filed the instant partial motion to dismiss. (ECF No. 17.) The assigned District Judge referred the motion to the undersigned. (ECF No. 18.) The motion has been fully briefed (ECF Nos. 24, 26), and the Court heard argument on May 13, 2025. (ECF No. 27.)

**II.**

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion to dismiss, "[a]ll allegations

of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The pleading standard under Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Id. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. To avoid a dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

In deciding whether a complaint states a claim, the Ninth Circuit has discussed that two principles apply. First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief. Id. "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro, 250 F.3d at 732, citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).

### III.

### DISCUSSION

Defendants Macomber and Horn (hereinafter, "Defendants") move to dismiss claim III – Violation of the Free Exercise Clause of the First Amendment and claim IV – Violation of the Equal Protection Clause of the Fourteenth Amendment from the complaint. (ECF No. 17.) Succinctly, Defendants argue that have been alleged to be defendants in a supervisory position, sued in their official capacity only, and, in any event, the complaint fails to allege a causal link between Defendants and the alleged constitutional violation. (Id. at p. 5.) In his opposition,

6

Plaintiff argues that these claims are brought pursuant to Monell v. Dep't of Soc. Servs. Of the City of N.Y., 436 U.S. 658 (1978). (ECF No. 24.) In reply, Defendants contend that a theory of Monell liability is foreclosed by Eleventh Amendment immunity. (ECF No. 26, p. 2.) From the briefing and relevant law on these issues, the Court agrees with Defendants in all respects.

At the hearing, however, Plaintiff took a different approach. When asked by the Court what Plaintiff's theory of liability was, Plaintiff—for the first time ever—asserted that his claims against Defendants were subject to the exception of sovereign immunity first recognized in Ex parte Young, 209 U.S. 123 (1908). Notwithstanding Plaintiff's change of course from his opposition, the Court will first dispose of the arguments brought in the briefing before turning to the argument raised in the hearing.[1]

### A.  Theory of Liability under Monell

In the briefing it seems as if Plaintiff has disclaimed any theory of supervisory liability against Defendants in their individual capacity. (ECF No. 24, p. 8.) Yet, Plaintiff also states "[w]ere the Court to assume that Defendants' characterization of Plaintiff's Claims III and IV is accurate and that Plaintiff in fact brings his claims under a supervisor liability theory, things Plaintiff does not concede, minor amendments to the Complaint would suffice to survive a motion to dismiss against a supervisor liability theory." (Id. at p. 10.) This is puzzling to the Court, whose duty does not generally include "assuming characterizations" of legal theories undergirding parties' claims. To that point, the Court notes that nowhere in the complaint did Plaintiff raise Monell liability and Plaintiff has explicitly, and emphatically, limited to suing Defendants in their official capacities. (ECF No. 1, ¶¶ 4, 16, 17, 27, 28, 58-66, 76-95.) Thus, Defendants approach in their motion to dismiss appears to be rational and not, as Plaintiff puts it, a "confusing mess."

Given Plaintiff's representations, the Court will first analyze whether Eleventh Amendment immunity bars a theory of Monell liability as to Defendants. Thereafter, the Court will outline at least two legal standards whereby supervisors may be held liable in their

---

[1] Nowhere in Plaintiff's opposition to motion is Ex Parte Young cited.

individual capacities.  This area of the law can be opaque at times; however, the Court expects that going forward at least these issues will be clear.

The Eleventh Amendment "prohibit[s] federal courts from entertaining suits brought by a state citizen against the state or its instrumentality in the absence of consent." Mecinas v. Hobbs, 30 F.4th 890, 903 (9th Cir. 2022), quoting Culinary Workers Union, Loc. 226 v. Del Papa, 200 F.3d 614, 619 (9th Cir. 1999).  Thus, Monell liability cannot attach to a State entity.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989) (explaining that States are protected by the Eleventh Amendment while municipalities are not and noting that Monell is limited to "local government units," which are not considered part of the State for Eleventh Amendment purposes); see also Kentucky v. Graham, 473 U.S. 159, 165-170 (1985) (discussing the distinction between individual and official capacity claims and explaining that an official-capacity suit is a suit against the entity); Nat'l Audubon Soc'y, Inc. v. Davis, 307 F.3d 835, 847 (9th Cir. 2002) (observing that the Eleventh Amendment bars application of the Monell doctrine against state entities).

Here, the Defendants are sued in their *official* capacity as individual employees of CDCR, which is a state entity.  See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam) (observing that the CDCR is a state entity entitled to Eleventh Amendment immunity), citing Alabama v. Pugh, 438 U.S. 781 (1978); see also Kentucky v. Graham, 473 U.S. 159, 166 (1985); Leer v. Murphy, 844 F.2d 628, 631-32 (9th Cir. 1988); Morris v. Cal. Dep't of Corr. & Rehab., No. 1:17-cv-01488-AWI-MJS, 2018 WL 1211064, at *5 (E.D. Cal. Mar. 8, 2018) ("Monell liability cannot attach to an individual (in his or her individual capacity) or a State entity.").

Accordingly, to the extent that Plaintiff brings claims III and IV against Defendants in their official capacity under at theory of Monell liability, these claims must fail as barred by Eleventh Amendment immunity.  Again, Plaintiffs have limited themselves to suing Defendants in their official capacity only.  (See ECF No. 1, ¶¶ 4, 16, 17, 27, 28.)  Therefore, the Court will recommend that Defendants' motion to dismiss be granted.

Regarding Plaintiff's assertion in his brief that he could amend his complaint to state a

claim for claims III and IV against Defendants in their individual capacity, the Court notes that at the hearing, Plaintiff seemingly stood on bringing claims against Defendants in only their official capacities.   However, the Court provides the following legal standards in an abundance of caution, given Plaintiff's representation in his opposition that he seeks leave to allege claims against Defendants in their individual capacities.  (ECF No. 23, pp. 10-12.)

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of *respondeat superior*.  Iqbal, 556 U.S. at 676-77; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr, 652 F.3d at 1205-06; Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).  Stated differently, supervisors may be held liable for their own conduct "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr, 652 F.3d at 1207, quoting Hansen, 885 F.2d at 646.  As relevant here, "[t]he requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Corales, 567 F.3d at 570 (internal quotation omitted).  It may also be established by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." Dubner v. City & Cnty. of San Francisco, 266 F.3d 959, 968 (9th Cir. 2001).

As a distinct theory, supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy 'itself is a repudiation of the constitutional rights' and is 'the moving force of the constitutional violation.'" Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013), quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

**B.**      **Theory of Liability under Ex parte Young**

At the hearing,[2] Plaintiff argued that the exception to Eleventh Amendment immunity under Ex parte Young applies to both claims III and VI in this case. Defendants generally opposed, especially arguing that Plaintiff has not alleged a "fairly direct" connection between Defendants and the alleged constitutional deprivation. The Court agrees with Defendants.

"The Eleventh Amendment shields states from suits brought by citizens in federal court." Forward, Inc. v. Macomber, 173 F.4th 1121, 1124 (9th Cir. 2026). Under Ex parte Young, 209 U.S. 123 (1908), an exception to this rule, plaintiffs can sue "state officers in their official capacities for prospective declaratory or injunctive relief . . . for their alleged violations of federal law." Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris, 729 F.3d 937, 943 (9th Cir. 2013) (internal quotation marks and citation omitted). The sued state officer must have "some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." Ex parte Young, 209 U.S. at 157.

The Ninth Circuit has "long held that the connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." Forward, Inc., 173 F.4th at 1124, quoting Ass'n des Eleveurs, 729 F.3d at 943; see also Mecinas, 30 F.4th at 903-04 (requiring "the implicated state official [to] have a relevant role that goes beyond a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision") (internal quotation marks and citation omitted). "This 'fairly direct' requirement also applies where a plaintiff seeks to enjoin an ongoing violation of federal law." Id., citing Ctr. for Biological Diversity v. U.S. Forest Serv., 80 F.4th 943, 955 (9th Cir. 2023) ("Ex parte Young allows suits seeking prospective relief against a state official who has a fairly direct connection to an ongoing violation of federal law.") (citation omitted); see Mecinas, 30

---

[2] Though raised by Plaintiff for the first time ever during the hearing, Defendants noted the possibility of an Ex parte Young issue in their reply. (ECF No. 26, pp. 3-4.) The Court notes that at the hearing, both sides were afforded notice that Plaintiff proceeds on an Ex parte Young theory, as well as given the opportunity to argue their positions. Thus, the party-presentation principle is not implicated by the Court reaching the issue of Ex parte Young. See Margolin v. Nat'l Assoc. of Immigration Judges, 608 U.S. ___, ___, 146 S. Ct. 1285, 1288 (2026) ("Because courts are 'essentially passive instruments of government,' [they] rely on the parties to 'frame the issues for decision' and decide 'only the questions presented.'"), quoting United States v. Sineneng-Smith, 590 U.S. 371, 375-76 (2020).

F.4th at 903 (observing that the 'fairly direct connection' analysis is 'closely related—indeed overlapping' with traceability and redressability under Article III standing).

In support of his position, at the hearing Plaintiff directed the Court to various paragraphs of the complaint, which the Court quotes below.

> Defendant Jeff Macomber is the Secretary of the California Department of Corrections and Rehabilitation ("CDCR") and holds final decision-making authority over CDCR policies, procedures, and operations governing religious accommodations. He is sued in his official capacity, only.
>
> Defendant Patwin Horn is the Warden of Kern Valley State Prison ("KVSP"). He holds decision-making authority over KVSP's institutional policies, procedures, and practices affecting religious programming. Defendant Horn's principal office is located within KVSP, at 3000 West Cecil Avenue, Delano, CA 93216. He is sued in his official capacity, only.

(ECF No. 1, ¶¶ 16, 17.)

> CDCR regulations require institution heads, including Defendants Macomber and Horn, to make 'every reasonable effort to provide for the religious and spiritual welfare of all interested incarcerated persons . . .' Cal. Code Regs. tit. 15, § 3210(a). The regulations further require that a reasonable amount of time and accommodation be provided for religious services, consistent with facility security and other necessary institutional operations. *Id.* at § 3210(c). Where practicable, institution officials are required to ensure that other facility activities do not conflict with or disrupt scheduled religious services. *Id.*
>
> When a chaplain is unavailable, CDCR regulations permit institution heads to designate qualified incarcerated persons to minister to the religious needs of incarcerated persons of that faith. *Id.* at § 3211(a).

(Id. at ¶¶ 24, 25.)

> Over several years, Plaintiff Green has repeatedly brought informal and formal grievances regarding the lack of consistent Jumu'ah services.

(Id. at ¶ 29.)

> In 2024, Plaintiff Green exhausted the CDCR administrative remedy process concerning the lack of consistent Jumu'ah services at KVSP.

(Id. at ¶ 32.)

> In October 2024, Plaintiff Green's counsel sent a formal demand letter to CDCR seeking resolution regarding access to Jumu'ah

11

services.  CDCR did not respond.

(Id. at ¶ 37.)

Plaintiff argues that these alleged facts demonstrate a sufficient connection between Defendants and the alleged deprivation of Plaintiff's rights.  Further, Plaintiff argues that these facts demonstrate that Defendants were on notice of the alleged violations and failed to act.  Plaintiff then contends that by not allowing these claims to go forward, Plaintiff would be without a remedy.  Finally, Plaintiff argues that by Defendants not moving to dismiss Plaintiff's RLUIPA claim that this evidences that Plaintiff has in fact stated a claim for his First and Fourteenth Amendment claims.

Having gotten out ahead of Plaintiff's argument, in their reply Defendants begin by observing that it is undisputed that Defendants are senior staff officials within CDCR: Macomber as the Secretary of the Department and Horn as the KVSP Warden.  (ECF No. 26, p. 3.)  Defendants then assert that none of Plaintiff's allegations state that Defendants were *personally* involved in depriving Plaintiff of consistent access to Jumu'ah services.  In their view, Plaintiff's allegations center on unidentified KVSP and CDCR staff.  For example, "KVSP and CDCR staff informed Plaintiff Green that Jumu'ah services would not be conducted unless a chaplain was physically present."  (ECF No. 1, ¶ 33.)  "KVSP and CDCR staff rejected [Plaintiff's] proposals, stating that Jumu'ah services would not be conducted in the absence of a chaplain and that incarcerees were not permitted to lead the services.  Staff referenced staffing limitations and general safety or security concerns as reasons for these denials."  (Id. at ¶ 35.)  Furthermore, Defendants note that in his opposition, Plaintiff took the position that "personal participation is not required" of Defendants in arguing his now discarded theory of liability under Monell.  (ECF No. 26, pp. 3-4, citing ECF No. 24, p. 3.)

As presently pleaded, the Court agrees with Defendants that the allegations regarding who were personally involved are alleged in generalities.  Even taking the factual allegations identified by Plaintiff in the hearing in the light most favorable to him, the Court finds that at most Plaintiff has alleged only a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provisions.  Indeed, the cited

12

paragraphs by Plaintiff above outline only that Defendants are the Secretary of CDCR and Warden of KVSP with a duty to enforce Cal. Code Regs. tit. 15, § 3210.  That Plaintiff brought grievances through informal and formal channels does not directly implicate that Defendants had 'some connection with the enforcement of the act' or that the alleged deprivation was fairly traceable to Defendants.

Plaintiff's auxiliary arguments are of no moment.  First, Plaintiff's contention that he would be left without a remedy is patently false because, as Defendants observed, Plaintiff still has his RLUIPA claim.  Yet, even if Plaintiff did not, Eleventh Amendment immunity, for example, can often be a complete bar to a party's claims.  Thus, simply because a party is left without a remedy is not persuasive in and of itself that the Court should find for Plaintiff here.

Second, Plaintiff's argument that because Defendants do not attack Plaintiff's RLUIPA claim that this somehow only validates his First and Fourteenth Amendment claims is misguided. Significantly, "RLUIPA authorizes a private right of action to 'obtain appropriate relief against a government' for a violation of the statute, and it defines the term 'government' to include 'any other person acting under color of State law.'"  Fuqua v. Raak, 120 F.4th 1346, 1357 (9th Cir. ), quoting 42 U.S.C. §§ 2000cc-2(a), 2000cc-5(4)(A)(iii).  Thus, RLUIPA provides a limited waiver of sovereign immunity not present in the other constitutional claims.  See Al Saud v. Days, 50 F.4th 705, 709 (9th Cir. 2022) ("Only injunctive relief, not monetary damages, is available pursuant to RLUIPA, and the claim must be against defendants in their official capacities."), citing Sossamon v. Texas, 563 U.S. 277, 287-88 (2011).

Because Plaintiff has failed to allege that Defendants had a fairly direct connection to the alleged deprivation, Plaintiff's claims at this time are not subject to the Ex parte Young exception to Eleventh Amendment immunity.  Therefore, the Court will recommend that this aspect of Defendant's motion also be granted.

**C.    Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2). "In the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should . . . be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962), quoting Fed. R. Civ. P. 15(a).  In other words, "[a]bsent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).  The decision of whether to grant leave to amend is within the discretion of the district court. Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

Leave to amend should be granted.  Here, the Court does not find that there is any indication that Plaintiff has engaged in undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, nor would there be futility of amendment or undue prejudice to Defendants at this time.  In particular, it appears that Plaintiff has only now, after a hearing, gained a foothold on his theory of liability and the related pleading requirements.  That said, the Court will recommend granting leave to amend with the understanding that Plaintiff will do so only to the extent he believes in good faith that he can plead additional factual material that could satisfy the legal standards and deficiencies identified herein. See Fed. R. Civ. P. 15(a)(2); Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**V.**

**CONCLUSION AND RECOMMENDATION**

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' partial motion to dismiss (ECF No. 17) be GRANTED with leave to amend.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. **Within fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014), citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **June 10, 2026**

STANLEY A. BOONE
United States Magistrate Judge

15