**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HALIKI GREEN JR., Plaintiff, v. JEFF MACOMBER, et al., Defendants. | Case No. 1:26-cv-00322 JLT SAB<br>ORDER ADOPTING IN PART AND DECLINING TO ADOPT IN PART FINDINGS AND RECOMMENDATIONS AND GRANTING MOTION TO DISMISS IN PART WITH LEAVE TO AMEND<br>(Docs. 17, 29) |

Haliki Green is a Muslim man who is incarcerated at Kern Valley State Prison, a facility operated by the California Department of Corrections and Rehabilitation (CDCR). (Doc. 1 at 5.) His "sincerely held religious beliefs require him to participate in Jumu'ah, a weekly congregational prayer held at midday every Friday." (*Id.* at 6 (footnote omitted).) An imam normally leads Jumu'ah, but Green believes that when an imam is not available, he or another Muslim inmate may lead the sermon and prayer. (*Id.*) CDCR has sometimes permitted Green to participate in Jumu'ah, but only sporadically. (*See id.* at 7–8.) Prison officials have rejected Green's requests for more regular services and have not permitted him or other inmates to lead them. (*See id.*) By contrast, he alleges prison officials have permitted inmates in other faith groups to hold meetings regularly. (*See, e.g.*, *id.* at 16.)

Green filed this case in early 2026, represented by counsel. (*See generally id.*) Among other claims, he alleges under 42 U.S.C. § 1983 that prison officials have violated the First and

Fourteenth Amendments to the U.S. Constitution. (*See id.* at 10–12, 14–16.) As defendants to these claims, he names the Secretary of the CDCR and the Warden of the Kern Valley State Prison, both in their official capacities. (*See id.* at 5.) Green seeks prospective injunctive and declaratory relief only, not damages. (*See id.* at 17–18.)

The Secretary and the Warden move to dismiss the claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 17.) They argue that his complaint is based on the untenable theory that they were liable "under a respondeat superior theory." (*Id.* at 5.) In opposition, Green argues his claims were viable under the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*See generally* Doc. 24.) The Secretary and Warden point out in their reply that Green cannot pursue a *Monell* claim against a state or its officers in their official capacity. (*See* Doc. 26 at 2–3.) They also argue for the first time in their reply that the case cannot move forward under the Supreme Court's decision in *Ex Parte Young*, either. (*See* Doc. 26 at 3–4 (citing 209 U.S. 123 (1908)).)

The matter was referred to the assigned magistrate judge, who clarified the parties' positions at a hearing. (*See* Docs. 27, 32.) Green argued in the hearing "that the proper claim is *Ex Parte Young* because these are official capacity claims seeking prospective injunctive relief to halt the violation of a federal law." (Doc. 32 at 5.) The magistrate judge then issued findings and recommendations. (Doc. 29.) He recommends dismissing the complaint with leave to amend, first rejecting the possibility that any viable claim could move forward under *Monell* (*id.* at 7–9), and second finding that the only "connection" between the two defendant officials and the events that led to this case was their "generalized duty to enforce state law or general supervisory power" (*id.* at 12–13). Green objected to the findings and recommendations, and the defendants filed a response. (*See* Docs. 31, 33.) The Court has reviewed the matter de novo.

"The Eleventh Amendment erects a general bar against federal lawsuits brought against a state." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1133–34 (9th Cir. 2012) (quoting *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003)). State officers cannot be sued in their official capacities for damages, and states cannot be liable under *Monell*. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989); *Kentucky v. Graham*, 473 U.S. 159, 169–

70 (1985). The magistrate judge correctly rejected Green's argument that he could rely on *Monell* to pursue claims against the Secretary and Warden.

Under *Ex Parte Young*, however, a plaintiff can allege that a state official has violated federal law and seek prospective declaratory or injunctive relief. *Mecinas v. Hobbs*, 30 F.4th 890, 903–04 (9th Cir. 2022). The defendant "must have 'some connection with the enforcement of the act.'" *Forward, Inc. v. Macomber*, 178 F.4th 470, 473 (9th Cir. 2026) (quoting *Ex parte Young*, 209 U.S. at 157). Otherwise the official is nothing more than a "representative of the state" in the lawsuit, which the Eleventh Amendment would not allow. *Id.* (quoting *Ex parte Young*, 209 U.S. at 157).

The Ninth Circuit has said this rule is a "modest requirement" that necessitates only a "minimal connection." *R. W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1228 (9th Cir. 2023); *Mecinas v. Hobbs*, 30 F.4th 890, 904 (9th Cir. 2022). It "demands merely that the implicated state official have a relevant role that goes beyond 'a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision.'" *Mecinas*, 30 F.4th at 903–04 (9th Cir. 2022) (quoting *Coal. To Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012)).

The Circuit's opinion in *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris* offers a helpful example of how the requirement often works. *See* 729 F.3d 937, 941–42 (9th Cir. 2013). A group of farmers and restaurants filed a lawsuit challenging a new California law that effectively banned the sale of foie gras. *See id.* at 941–42 (9th Cir. 2013). They named two defendants, both in their official capacities: the Governor and the Attorney General. *See id.* at 943–44. The claims against the Governor were a nonstarter. *See id.* at 943. His only connection to the foie gras ban was his general duty to enforce state law. *See id.* By contrast, the claims against the Attorney General could move forward. *See id.* at 943–44. The state's Health and Safety Code granted district attorneys authority to enforce the new law, and the state's constitution gave the Attorney General authority both to supervise district attorneys and to act as a district attorney. *See id.* These powers were "sufficient" for purposes of *Ex Parte Young*. *Id.* at 944.

The situation in this case is similar. Green has not cited any constitutional provisions, laws, regulations, or other authorities that give the CDCR Secretary anything more than a general supervisory authority over the state's prisons. At least as the complaint is currently written, the Secretary is an improper stand-in for the state of California. The magistrate judge correctly recommended dismissing the claims against the CDCR Secretary.

But as Green points out in his complaint (*see* Doc. 1 at 6), state regulations specifically obligate the wardens of California's prisons to "make every reasonable effort to provide for the religious and spiritual welfare of all interested incarcerated persons." Cal. Code Regs., tit. 15, § 3210(a); *see also id.* § 3000 (defining relevant terms, including "Institution Heads"). That includes "affording incarcerated persons a reasonable accommodation to attend a scheduled Religious Service." *Id.* § 3210(a). And under the same regulation, "[r]easonable time and accommodation shall be allowed for religious services in keeping with facility security and other necessary institutional operations and activities." *Id.* § 3210(c). The CDCR's manual makes wardens responsible for religious programs, too. (*See* Doc. 1 at 5 n.1.)

These regulations show the Warden is connected to the policy at the center of Green's claims. He is a proper defendant, just as officials in similar positions have been proper defendants in similar cases that the Ninth Circuit has encountered over the years. *See, e.g.*, *Coalition to Defend Affirmative Action*, 674 F.3d at 1134 (holding that the head of the University of California had an adequate connection to an allegedly unconstitutional university admissions rule); *Mecinas*, 30 F.4th at 903 (holding that the Arizona Secretary of State had an adequate connection to an allegedly unconstitutional ballot statute); *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (holding that the governor, who appointed state judges, and the secretary of state, who certified elections, were proper defendants in a case challenging limits on the number of elected state judges). The Court declines to adopt the magistrate judge's contrary recommendation.

The Court therefore **ORDERS** as follows:

- The Findings and Recommendations (Doc. 29) are **ADOPTED IN PART** as explained above.

- The motion to dismiss (Doc. 17) is **GRANTED IN PART**. The claims against the CDCR Secretary are **DISMISSED WITH LEAVE TO AMEND**.
- Any amended complaint shall be filed **WITHIN THIRTY DAYS** of the date this order is filed.

IT IS SO ORDERED.

Dated: _July 24, 2026_

UNITED STATES DISTRICT JUDGE